CHESAPEAKE VENDING CO., Inc., a body corporate

v.

Louis DeCARLO, Assistant Regional Commissioner, Alcohol and Tobacco Tax Division, Internal Revenue Service, Philadelphia Region,

and

Paul Younce, Supervisor-in-Charge, Alcohol and Tobacco Tax Division, Internal Revenue Service, Baltimore District, Baltimore, Maryland.

Civ. No. 14439.

United States District Court
D. Maryland.

Jan. 7, 1965.

Leon H. A. Pierson, Pierson & Pierson, Baltimore, Md., for petitioner.

Thomas J. Kenney, U. S. Atty., and Joseph H. H. Kaplan, Asst. U. S. Atty., Baltimore, Md., for respondents.

THOMSEN, Chief Judge.

Petitioner seeks an order enjoining the Internal Revenue Service from disposing of 31 coin-operated gaming devices seized by the Service under sec. 7321, IRC 1954, Title 26 U.S.C.A., for violation of sec. 7302, because of non-payment of the tax imposed by sec. 4461(a) (2).[1] The Serv-

1. All references herein are to the IRC of 1954, 26 U.S.C.A., unless otherwise indicated. The relevant portions read as follows:

"§ *4461. Imposition of tax*

"*(a) In general.*—There shall be imposed a special tax to be paid by every person who maintains for use or permits the use of, on any place or premises occupied by him, a coin-operated amusement or gaming device at the following rates:

"(1) $10 a year, in the case of a device defined in paragraph (1) of section 4462(a);

"(2) $250 a year, in the case of a device defined in paragraph (2) of section 4462(a); and

"(3) $10 or $250 a year, as the case may be, for each additional device so maintained or the use of which is so permitted. If one such device is replaced by another, such other device shall not be considered an additional device.

"* * * *"

"§ *4462. Definition of coin-operated amusement or gaming device*

"*(a) In general.*—For purposes of this subchapter, the term 'coin-operated amusement or gaming device' means—

"* * * * *

"(2) any machine which is—

"(A) a so-called 'slot' machine which operates by means of the insertion of a coin, token, or similar object and which, by application of the element of chance, may deliver, or entitle the person playing or operating the machine to receive, cash, premiums, merchandise, or tokens, or

"* * * *"

"§ *3702. Property used in violation of internal revenue laws*

"It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. * * * The seizure and forfeiture of any property under the provisions of this section and the disposition of such property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal revenue laws."

"§ *7321. Authority to seize property subject to forfeiture*

"Any property subject to forfeiture to the United States under any provision of this title may be seized by the Secretary or his delegate."

"§ *7325. Personal property valued at $2,500 or less*

"In all cases of seizure of any goods, wares, or merchandise as being subject to forfeiture under any provision of this title which, in the opinion of the Secretary or his delegate, are of the appraised value of $2,500 or less, the Secretary or his delegate shall, except in cases otherwise provided, proceed as follows:

"*(1) List and appraisement.*—The Secretary or his delegate shall cause a list containing a particular description of the goods, wares, or merchandise seized to be prepared in duplicate, and an appraisement thereof to be made by three sworn appraisers, to be selected by the Secretary or his delegate who shall be respectable and disinterested citizens of the United States residing within the internal revenue district wherein the seizure was made. Such list and appraisement shall be properly attested by the Secretary or his delegate and such appraisers. Each appraiser shall be allowed for his services such compensation as the Secretary or his delegate shall by regulations prescribe, to be paid in the manner simi-

ice proceeded under sec. 7325, and takes the position that the relief sought should be denied (1) because petitioner did not comply with sec. 7325(3) by filing the required bond, and (2) because the machines and their contents were subject to forfeiture, which this Court has no authority to remit. The case has been submitted on a stipulation of facts, supplemented by testimony and exhibits.

It is conceded that each of the 31 machines involved in this case is a device defined in sec. 4462(a) (2), with respect to which sec. 4461(a) (2) imposes a "special tax" of $250 a year "to be paid by every person who maintains for use or permits the use of" the gaming device "on any place or premises occupied by him". Such person is customarily called the "operator", to distinguish him from the "owner" of the machine.

Petitioner is the owner of 28 of the 31 machines,[2] which it leased to the several operators of establishments at 22 distinct locations in Baltimore County and Baltimore City. These operators maintained the machines for use and permitted them to be used by the public. The receipts from each machine were divided 50–50 between the owner and the operator. Applications for the special tax stamps re-

quired for each year beginning July 1 were signed by or on behalf of the operators and were delivered to the Baltimore District office of the Internal Revenue Service by petitioner's president. Petitioner customarily advanced the money for the stamps, and was reimbursed out of the gross receipts from the machines.

On July 2, 1962, William Angster, petitioner's president, delivered to E. M. Friedland, Assistant Chief of the Returns and Receipt Branch, the 31 applications (and a few other applications not involved in this case), together with a check for $8,470 drawn on petitioner's account at the Equitable Trust Company. Angster knew that petitioner did not have sufficient funds in the bank to meet the check, but he had been promised a loan by an undisclosed person. He asked Friedland to delay depositing the check. Friedland said that could not be done, but that in view of the holiday the check would probably not reach the bank for about a week. In fact the check was deposited on July 9, was not paid, and was returned to the Collection Division marked NSF on July 18. The prospective lender had not made good his promise, and Angster had not made other

---

lar to that provided for other necessary charges incurred in collecting internal revenue.

"(2) Notice of seizure.—If such goods are found by such appraisers to be of the value of $2,500 or less, the Secretary or his delegate shall publish a notice for 3 weeks, in some newspaper of the district where the seizure was made, describing the articles and stating the time, place, and cause of their seizure, and requiring any person claiming them to appear and make such claim within 30 days from the date of the first publication of such notice.

"(3) Execution of bond by claimant. —Any person claiming the goods, wares, or merchandise so seized, within the time specified in the notice, may file with the Secretary or his delegate a claim, stating his interest in the articles seized, and may execute a bond to the United States in the penal sum of $250, conditioned that, in case of condemnation of the articles so seized, the obligors shall pay all

the costs and expenses of the proceedings to obtain such condemnation; and upon the delivery of such bond to the Secretary or his delegate, he shall transmit the same, with the duplicate list or description of the goods seized, to the United States attorney for the district, and such attorney shall proceed thereon in the ordinary manner prescribed by law.

"(4) Sale in absence of bond.—If no claim is interposed and no bond is given within the time above specified, the Secretary or his delegate shall give reasonable notice of the sale of the goods, wares, or merchandise by publication, and, at the time and place specified in the notice, shall, unless otherwise provided by law, sell the articles so seized at public auction, or upon competitive bids, in accordance with such regulations as may be prescribed by the Secretary or his delegate."

2. The other 3 had been loaned to petitioner for use in its business.

arrangements. On July 23, the Service seized the 31 machines at the 22 locations, as authorized by sec. 7302 and sec. 7321. Since the Secretary's delegate was of the opinion that the value of the property seized in each of the 22 seizures was less than $2,500, the Service proceeded under sec. 7325 to have the machines appraised by independent appraisers. The appraisals showed that in no instance did the value of the property seized at any location or from any operator exceed $2,500. The seizures were advertised in the Morning Sun on September 10, 17 and 24, 1962. In accordance with sec. 7325(2) the advertisement advised any person claiming an interest in any of the seized property of his right to file a claim and deliver a $250 cost bond with the Supervisor in Charge, Alcohol and Tobacco Tax, at a specified address, on or before October 10, 1962; otherwise the property would be forfeited and disposed of according to law. Neither petitioner nor anyone else filed such a claim or such a bond.

Meanwhile, after the seizures, Angster had obtained some money; on July 25 he delivered a check for $4,470 to Friedland and on July 27 another check for $4,000. The stamps were reissued in the names of the operators at the several locations. Angster delivered the reissued stamps to them. Some of the stamps were used on other machines leased by petitioner to some of the operators. It does not appear what was done with the other stamps, but they were available for use. No doubt some were not used, because petitioner lost some locations to competitors as a result of the fiasco.

Both defenses set up by the government are good. In Milkint v. Morgenthau, 4 Cir., 92 F.2d 266 (1937), the Court sustained a predecessor statute similar to the present sec. 7325, holding that the administrative method of proceeding "against seized property of the value of $500, or less, was an exclusive method and Congress undoubtedly had the right to make this provision". See also Fisburn v. Jackson, N.D.Tex., 55 F.2d 934 (1932); Application of Colacicco, S.D.N.Y., 55 F.Supp. 766 (1943); United States v. One Hudson Sedan, M.D. Pa., 16 F.Supp. 895 (1936); United States v. Chicelli, W.D.N.Y., 10 F.Supp. 900 (1935).

The machines and their contents were subject to forfeiture for non-payment of the special tax, and the seizures were proper. Voglino v. United States, 4 Cir., 253 F.2d 794 (1958), cert. den. 357 U.S. 919, 78 S.Ct. 1359, 2 L.Ed.2d 1364, aff'g United States v. Five (5) Coin-Operated Gaming Devices and Contents, D.Md., 154 F.Supp. 731 (1957).

This Court has no jurisdiction to remit or mitigate the forfeiture in this case. United States v. One 1957 Ford Tudor Fairlane Victoria, D.Md., 161 F.Supp. 232 (1958).

The reissuance of the stamps, the use of some of them on other machines, and the availability for use of all of them, answers the equitable argument on which petitioner sought to rely.

A judgment will be entered dismissing the petition with costs.